IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CR-06-1091-TUC-JMR |
| Plaintiff, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Linda Rose Garcia, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court are Defendant Linda Rose Garcia's Motion to Sever filed on September 1, 2006 (Doc. No. 15) and Defendant Linda Rose Garcia's Motion to Suppress filed on September 1, 2006. (Doc. No. 16). The government filed a response to the Motions on September 22, 2006 (Doc. No. 20); Defendant did not file a reply. Defendant Terrance Wood joined in the Motions on October 26, 2006 (Doc. No. 28), but withdrew his joinder by oral motion during a hearing on November 20, 2006 (Transcript of November 20, 2006, hearing (hereafter "Tr"), pg. 7). Defendant Roberta Wood also joined in Defendant Linda Rose Garcia's motions (Doc. No. 31), but later withdrew her notice of joinder (Doc. Nos. 38, 43). This matter came before the Court for a hearing and a report and recommendation as a result of a referral made on October 27, 2006, pursuant to LRCrim 5.1 (Doc. No. 29).[1]

---

[1] Defendant Linda Rose Garcia's Motion for Discovery filed on June 9, 2006 (Doc. No. 8) was also referred to Magistrate Judge Guerin on October 27, 2006 (Doc. No. 29). Magistrate Judge Guerin denied the Motion for Discovery as moot on November 13, 2006

1   This matter was set for evidentiary hearing and evidence was heard on November 20,
2   2006. Defendant Linda Rose Garcia was present and represented by counsel. Counsel
3   appeared on behalf of Defendant Roberta Wood, who was not present due to the fact that she
4   was hospitalized at the time of the hearing. This matter was submitted following oral
5   argument at the conclusion of the hearing and taken under advisement.

6   Having now considered the matter, the Magistrate Judge recommends that the District
7   Court, after its independent review, deny as moot Defendant Linda Rose Garcia's Motion to
8   Sever (Doc. No. 15) and deny Defendant Linda Rose Garcia's Motion to Suppress (Doc. No.
9   16).

## FACTUAL FINDINGS

11   Border Patrol Agent Victor Casillas testified on behalf of the government. According
12   to Agent Casillas, on May 15, 2005, around 6:00 p.m., he and his partner, Agent Debou, were
13   patrolling the intersection of Federal Route 1 and State Route 86 in the District of Arizona.
14   It was a clear day and there was minimal to no traffic. Agent Casillas patrols this intersection
15   on a daily basis. At that time, the agents noticed a vehicle approaching the intersection, and
16   Agent Casillas got out of his marked vehicle and walked toward the stop sign at the
17   intersection and stood at the sign. Agent Casillas was wearing plain clothes with a tactical
18   vest that read, "United States Border Patrol," in big bright yellow letters. As the vehicle
19   came closer to the intersection, Agent Casillas observed that it was traveling at
20   approximately 70 miles-per-hour in a 55 mile-per-hour zone.

21   The vehicle came to an abrupt stop at the stop sign at the intersection. From his
22   position next to the stop sign, Agent Casillas was able to see through the front windshield of
23   the vehicle and noticed what appeared to be a bundle of marijuana in the back seat, partially
24   covered with a blanket. After seeing the marijuana, Agent Casillas signaled to the driver,
25   Defendant Linda Rose Garcia, to remain at the stop sign and he walked toward the vehicle.

---

27   (Doc. No. 32), after the parties indicated there were no issues to resolve.

1 Agent Casillas had first observed two occupants in the vehicle; as he approached the vehicle
2 he noticed a third occupant in the back. When Agent Casillas was approximately 3 to 4 feet
3 away from the vehicle, he could smell the strong odor of marijuana.
4       Agent Casillas approached the driver's window which was down, and told Defendant
5 Garcia to put the vehicle in park. Defendant Garcia complied. Agent Casillas observed that
6 the occupant in the back of the vehicle, Defendant Terrance Wood, was sitting on a blanket
7 which appeared to be partially covering bundles of marijuana. Agent Casillas noticed that
8 Mr. Wood was unable to sit up straight because of the height of the marijuana bales. (It was
9 later determined that the back seat had been removed to allow for the large bales of
10 marijuana.) Agent Casillas also observed a bundle of marijuana on the front passenger's
11 floorboard. The front passenger was later identified as Defendant Roberta Wood, the
12 registered owner of the vehicle. Agent Casillas asked Defendant Garcia to pop the trunk of
13 the vehicle, which she did, although she initially had difficulty finding the release. The
14 agents discovered additional bundles of marijuana in the trunk. At this point Agent Casillas
15 drew his weapon and asked each of the Defendants to step out of the car where he placed
16 them under arrest. A search of the vehicle revealed 20 bundles of marijuana with a combined
17 weight of 303 pounds, or 137 kilograms.
18       All three individuals were given Miranda warnings. The parties stipulated at the
19 hearing that after being given her Miranda warning, Roberta Wood made a statement that
20 inculpated herself and her co-defendants.
21       Defendant Garcia also testified regarding the events of May 15, 2006. Defendant
22 Garcia stated that she drank beer all day on May 13 and 14, and also on the morning of May
23 15. She passed out during the morning of May 15 and was awakened by Defendant Roberta
24 Woods in the afternoon. All three defendants then drove an hour to the village of Kerwo,
25 drinking beer in the car. Defendant Garcia estimated that the three defendants shared four
26 or five 40-ounce beers during the one-hour drive to Kerwo. The co-defendants stopped at
27 a house in Kerwo, where people that Defendant Garcia did not know took the vehicle away
28

1  from them and then brought it back sometime later. The three co-defendants then left Kerwo
2  and were traveling to the village of Ventana[2] when they were stopped by Agent Casillas.

3        Defendant Garcia testified that she was still intoxicated as she drove toward the
4  intersection of Federal Route 1 and State Route 86, and that she had blacked out while
5  driving, but that she woke up when Agent Casillas waved her to a stop. According to
6  Defendant Garcia, Agent Casillas was standing by his vehicle as she approached the stop
7  sign, and he signaled for her to stop before she stopped at the stop sign. Agent Casillas
8  approached the passenger's window on the driver's side of her vehicle and asked her to put
9  the back window down. At that point, Agent Casillas observed marijuana in the vehicle and
10 asked the Defendants to step out of the car.

11       Defendant Garcia testified that she did not know that the marijuana was in the vehicle
12 until it was stopped at the stop sign. She did not see the large bale of marijuana on the floor
13 in the front on the passenger side. According to Defendant Garcia, after stopping the car, but
14 prior to Agent Casillas asking her to roll down her back passenger window, she turned and
15 looked into the back of the vehicle and saw the marijuana. She could not remember when
16 the marijuana was placed in the vehicle and specifically attributed her failed memory to the
17 fact that she had been drinking. She did not smell the marijuana in the car because in
18 August, 1983, she was punched in the nose, and as a result she sometimes has no sense of
19 smell.

20 **ANALYSIS**

21 **A.    Motion to Sever**

22       Defendant Garcia seeks to sever her trial from the trial of co-defendant Roberta Wood
23 because, according to Garcia, Roberta Wood's statement implicating herself and her co-
24 defendants constitutes a co-defendant confession of a non-testifying defendant, the admission

---

[2] Defendant Garcia later testified that an unknown person in Kerwo told her to drive from Kerwo to a village called Charco 27.

- 4 -

1  of which would violate Garcia's Sixth Amendment right to confrontation and cross-
2  examination.

3  Defendants Terrance and Roberta Wood pled guilty on November 30, 2006 (Doc.
4  Nos. 47 and 48). Accordingly, Defendant Garcia's Motion to Sever is now moot. During the
5  November 20, 2006 hearing, however, Defendant Garcia argued that the issue was not moot
6  and that Defendant Roberta Wood's statement should not be admitted during Defendant
7  Garcia's trial because it constitutes inadmissible hearsay. The government argued that if
8  Garcia opens the door through cross-examination, or if Roberta Wood elects to testify, then
9  those statements should be admissible under Rule 801(d)(2)(E), Fed. R. Evid., the co-
10 conspirator exception to the hearsay rule. Whether Defendant Roberta Wood's statement is
11 admissible at Defendant Garcia's trial is an issue separate and apart from the now-moot issue
12 of severability. Therefore, the magistrate judge recommends denying the Motion to Sever
13 as moot. Whether the statement is admissible if Defendant Garcia opens the door at trial is
14 an issue best resolved by the District Court at trial.

15 **B.    Motion to Suppress**

16 Defendant Garcia contends that Agent Casillas stopped the Defendant's vehicle
17 without reasonable suspicion, in violation of the Defendant's Fourth Amendment rights.

18 The Fourth Amendment prohibits "unreasonable searches and seizures" by the
19 Government, and its protections extend to brief investigatory stops of persons or vehicles that
20 fall short of traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968). Whether an encounter
21 between an individual and law enforcement authorities constitutes an investigatory stop is
22 a mixed question of law and fact. *See United States v. Alvarez*, 899 F.2d 833, 836 (9th
23 Cir.1990). Questioning by law enforcement officers constitutes an investigatory stop only
24 if, in view of all the circumstances surrounding the incident, a reasonable person would have
25 believed that he was not free to leave. *See United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir.
26 1994). Law enforcement officers do not implicate, much less violate, the Fourth Amendment

27
28

by merely approaching an individual on the street or by asking him if he is willing to answer some questions. *See id.*

In this case, the magistrate judge finds that Agent Casillas did not stop or order the stop of the Defendant's vehicle. Defendant Wood brought her vehicle to a stop at a designated stop sign in compliance with state and local traffic laws. Agent Casillas credibly testified that he did not signal to Defendant Garcia to remain stopped until after the vehicle had stopped at the stop sign and he saw, through the front windshield, the marijuana in the back of the car. Although Defendant Garcia testified that Agent Casillas motioned for her to stop before she reached the stop sign, the Court does not find her testimony credible, particularly in light of the fact that Defendant Garcia admitted that she was intoxicated to the point that she blacked out just prior to reaching the intersection. Her ability to reliably recall the specific events of May 15, 2006 is therefore highly suspect.

Even if Agent Casillas' actions did constitute a stop, the stop did not violate Defendant's Fourth Amendment rights. A stop is justified under the Fourth Amendment if the officer's action is supported by reasonable suspicion to believe that the person stopped is, or is about to be, engaged in criminal activity. *See United States v. Arvizu,* 534 U.S. 266, 273 (2002). In making a reasonable suspicion determination, the Court looks to the totality of the circumstances to evaluate whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* In the present case, Agent Casillas testified that he observed the defendant's vehicle traveling at a high rate of speed as it approached the stop sign and, once it stopped at the stop sign, he observed what appeared to be marijuana in the rear of the vehicle. The photo exhibits admitted during the hearing support Agent Casillas' testimony that a bundle of marijuana located in the back seat could be viewed through the front windshield.[3] In addition, Defendant Garcia testified that she

---

[3]Defendant Garcia asserts that the photographic exhibits demonstrate that Agent Casillas' testimony was not credible. Agent Casillas testified that Exhibit 6 shows the marijuana bale that he saw in the back of the car as he stood near the stop sign and looked

- 6 -

1 could see the marijuana in the back of the vehicle when she looked over her shoulder while
2 still in the driver's seat. Having observed the vehicle traveling at a high rate of speed, and
3 having observed marijuana in the vehicle, Agent Casillas was reasonably suspicious that the
4 vehicle was transporting illegal drugs, and the stop was justified. *See Arvizu*, 534 U.S. at 273
5 ("An officer's reasonable suspicion may be informed by the officer's own experience and
6 specialized training; an officer may make inferences from and deductions about the
7 cumulative information available to them that "might well elude an untrained person."").

8
9
10
11
12
13 ────────────────

14 through the front windshield. According to the Defendant, Agent Casillas could not have seen the marijuana from this position outside of the front passenger window because his view
15 was obstructed by Defendant Roberta Wood, who was sitting in the front passenger seat,
16 Defendant Terrance Wood who was sitting on one of the bundles in the back seat, and because the bundles were at least partially covered by a blanket. Furthermore, Defendant
17 Garcia suggests that Exhibit 6 was somehow doctored or staged and Defendant Garcia claims
18 Exhibits 5 and 7 support this conclusion because the bundle of marijuana seen in Exhibit 6 cannot be seen in Exhibits 5 or 7. The magistrate judge does not find these arguments
19 persuasive. Exhibit 5 depicts only the front seat and floor and Exhibit Seven depicts the back
20 seat of the car from the back passenger side. Neither of these photographs excludes the possibility that Agent Casillas observed the marijuana from the front of the vehicle. In fact,
21 Exhibit 7 shows a large bale of marijuana in shiny plastic wrap located in a position
22 consistent with the location of the shiny bale of marijuana shown in Exhibit 6. With respect to the issue of whether the black and white photo was doctored, Agent Casillas credibly
23 explained at the hearing that Exhibits 5, 6 and 7 were all taken on the date of the incident, but at different times, because his unit's camera ran out of disk memory and they had to
24 complete the photographs at the station where they obtained another camera. Exhibit 6 was taken with the second camera. The black and white print of Exhibit 6 was made at that time.
25 Subsequently, the agents were unable to locate the disk from the second camera to prepare
26 color prints for the government attorney. Thus, the only available print of Exhibit 6 was the black and white print. (Tr, p. 35 -38.) In contrast, Exhibits 5 and 7 were taken with the unit's
27 camera and that disk was available to the agents to make color prints.

28
- 7 -

## RECOMMENDATIONS

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court:

1.	DENY Defendant Linda Rose Garcia's Motion to Sever (Doc. No. 15) as moot, and
2.	DENY Defendant Linda Rose Garcia's Motion to Suppress (Doc. No. 16).

The parties have ten (10) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR-06-1091-TUC-JMR**.

DATED this 15th day of December, 2006.

_____
Jennifer C. Guerin
United States Magistrate Judge

- 8 -